# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL ACTION NO. 3:19-CR-012-S |
| WILLIE MACK GREEN (02) | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion to Suppress and Request for *Franks* Hearing [ECF No. 122]. For the reasons that follow, the Court denies the Motion.

### I.   BACKGROUND

In this criminal prosecution and forfeiture action, the Government charges Defendant with one count of a conspiracy to distribute a controlled substance—marijuana—under 21 U.S.C. § 846, and one count of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1). *See* ECF No. 138 ("Second Superseding Indictment") at 1-2, 7, 9-12. According to the Government, Defendant conspired to distribute between 50 and 100 kilograms of marijuana, and also knowingly possessed two pistols, two rifles, a shotgun, and a derringer,[1] while knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. *See id.* at 1-2, 7. The present dispute arises out of the seizure of the firearms pursuant to a warrant Defendant alleges was defective because it was based on Task Force Officer Eric Barnes's ("TFO Barnes") false and misleading statements.

---

[1] Specifically, the Government alleges that Defendant possessed: (1) a 9 mm Strum Ruger P95DC pistol; (2) a .40 caliber Springfield XDM-40 pistol; (3) a .22 caliber Mossberg International 715T rifle; (4) a 12 gauge Mossberg 500A shotgun; (5) a 5.56 caliber Ruger AR-556 rifle; and (6) a .38 caliber Cobra CB38 derringer. *See* Second Superseding Indictment 7.

The search warrant at issue was based on an incident that occurred on November 20, 2018, at the Dallas Cabaret South Nightclub. *See* Mot. Ex. D ¶¶ 4, 5; Resp. 3-4. After Defendant and his companions were forcibly removed from the club by its bouncers, *see* Mot. 6; Resp. 3-4, surveillance video shows Defendant walking to his vehicle, opening the door, and leaning in. *See* Mot. 6; *id.* Ex. A ("Surveillance Video"). The club's security guard Ashley Veals ("Veals") then approached and began talking to Defendant, *see* Surveillance Video, until one of the co-defendants, James Oliver ("Oliver"), confronted and allegedly forcibly disarmed her. *See* Mot. 6; Surveillance Video. While Veals was occupied with Oliver, a second security guard, Dominique Gaston ("Gaston"), was talking to Defendant. *See* Surveillance Video. Gaston later reported that he could not see Veals when her firearm was taken. Mot. Ex. B ("Gaston's Interview") at 17:44:08-50, 17:47:30-35, 17:48:25-41, 17:50:10-50.

TFO Barnes interviewed Veals on November 21, 2018, and Gaston on November 26, 2018. *See* Mot. 6; *id.* Ex. B ("Veals's Interview"); Gaston's Interview. Veals told TFO Barnes that, after Defendant was removed from the club, he leaned into his car, took a firearm out of his glovebox, disengaged the safety, and demanded to be allowed to see the bouncers and certain people in the club. *See* Mot. 6; Veals's Interview 13:46:30 to 13:47:30. Veals also stated that someone at the scene informed her that "one of the guys pulled out a AR-15 [sic] and was like 'they'll air this [expletive] out.'" *See* Mot. 6-7; Veals's Interview 13:49:14 to 13:51:58. However, Veals stated that she did not personally observe or hear this statement. *See* Veals's Interview 13:49:14 to 13:51:58. Gaston also noticed Defendant holding a gun, but told TFO Barnes that "he knew [Defendant] 'wasn't going to pull it.'" Mot. 7; Gaston's Interview 17:44:00-07. Gaston identified Defendant as the individual who said that he "will air this [expletive] out," more than once. *See*

Mot. 7, Gaston's Interview 17:46:20-39, 17:49:13-41. Gaston could not see Veals for much of the encounter. *See* Gaston's Interview at 17:44:08-50, 17:47:30-35, 17:48:25-41, 17:50:10-50.

On November 29, 2018, TFO Barnes obtained an arrest warrant for Defendant for the offense of terroristic threat,[2] but did not execute this warrant. *See* Mot. 8; *id.* Ex. C. Thereafter, on December 10, 2018, TFO Barnes obtained a search warrant predicated on Defendant's terroristic threat charge. *See* Mot. 8; *id.* Ex. D ("Search Warrant & Aff."). TFO Barnes's affidavit states, in part, as follows:

> [Defendant] removed a firearm from the glove compartment . . . [and Veals] observed [Defendant] disarm the safety feature of a semi-automatic firearm. [Veals] attempted to encourage the [Defendant] to place the firearm down. [Defendant] told [Veals] that he was going to shoot the club up. [Veals] was alarmed by [Defendant's] demeanor and felt that he posed a grave threat to other employees, patrons and the establishment as a whole.
>
> [Defendant] who is a convicted felon fled the crime scene in [a] black Mercedes. . . .
>
> Based on state and federal laws, [Defendant] is prohibited from being in possession of a firearm based on his prior felony convictions. . . .
>
> I, the affiant have probable cause to believe . . . that evidence utilized during the Terroristic Threat . . . would be stored . . . at [Defendant's residence].
>
> On November 20, 2018 at approximately 2:55 am, [Defendant] was forced out of a club by employees due to his involvement in a disturbance inside the club. Once, [sic] [Defendant] was outside the club, [Veals] observed [Defendant] arm himself with a firearm and begin making remarks about shooting the club up. The suspect has demonstrated reckless nature and a lack of a respect for public safety.

*See* Search Warrant & Aff. ¶ 5, at '10141-43. The Search Warrant was executed on December 11, 2018, and led to the seizure of the six firearms Defendant is now charged with unlawfully possessing. *See* Resp. 5-6.

---

[2] Texas law provides, in relevant part, that "[a] person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to . . . place the public or a substantial group of the public in fear of serious bodily injury." TEX. PENAL CODE ANN. § 22.07(a)(5).

3

Defendant contends that TFO Barnes's affidavit contains five false statements: (1) that Veals "encourage[d] [Defendant] to place the firearm down"; (2) that Defendant "told . . . [Veals] that he was going to shoot the club up"; (3) that Veals "was alarmed by [Defendant's] demeanor and felt that he posed a grave threat to other employees, patrons and the establishment as a whole"; (4) that "[b]ased on state and federal laws, [Defendant] is prohibited from being in possession of a firearm based on his prior felony convictions"; and (5) that Defendant "demonstrated reckless nature and a lack of respect for public safety." Mot. 9. The Defendant moves the Court to hold a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), find the warrant defective because of the purportedly false statements, and suppress evidence of the firearms seized pursuant to this warrant.

## II.  ANALYSIS

### A.  *Motion for a* Franks *Hearing*

A *Franks* hearing "is a hearing to determine whether a police officer's affidavit used to obtain a search warrant was based on false statements by the police officer." *United States v. Richardson*, 478 F. App'x 82, 83 n.1 (5th Cir. 2012) (citation omitted). A defendant is entitled to an evidentiary *Franks* hearing if the defendant makes a "*substantial* preliminary showing" that (1) the police officer made "a false statement [in the affidavit] knowingly and intentionally, or with reckless disregard for the truth," and (2) that "the allegedly false statement is *necessary* to the finding of probable cause." *Franks*, 438 U.S. at 155-56 (emphases added). "There must be allegations of *deliberate* falsehood or reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *United States v. Torres*, 694 F. App'x 937, 944 (5th Cir. 2017) (emphasis added) (quoting *Franks*, 438 U.S. at 171). Additionally, the Court may properly deny a request for a *Franks* hearing where a warrant would be supported by probable cause with or without the challenged sections. *See United States v. Signoretto*, 535 F. App'x 336, 339 (5th Cir. 2013). For the reasons that follow, the Court finds that Defendant did not meet his burden of

making a substantial preliminary showing that any of the five challenged statements are products of deliberate falsehood or reckless disregard for the truth. Moreover, the Court finds that Defendant failed to meet his burden of making a substantial preliminary showing that the statements are necessary to the finding of probable cause.

(1)     *Falsity*

To be entitled to a *Franks* hearing, a defendant must allege that the affidavit contains falsehoods and provide "an offer of proof"—i.e., "a statement of supporting reasons." *Winfrey v. San Jacinto Cty.*, 481 F. App'x 969, 980 (5th Cir. 2012) (quoting *Franks*, 438 U.S. at 171). A defendant is not entitled to a *Franks* hearing solely by making "conclusory" allegations that the statements are false, *see United States v. Holmes*, 522 F. App'x 211, 212-13 (5th Cir. 2013), or by submitting evidence that makes the statements in the affidavit "debatable," *see United States v. Symmank*, 397 F. App'x 991, 994 (5th Cir. 2010). Rather, a defendant must make some offer of proof showing that the challenged portion is false or misleading. *See Franks*, 438 U.S. at 155-56. Here, Court finds that Defendant did not make a substantial preliminary showing that TFO Barnes's affidavit contains false or misleading statements.

First, Defendant faults TFO Barnes for attesting that Veals "attempted to encourage [Defendant] to place [his] firearm down," because "Veals never made this statement." Mot. 11. However, TFO Barnes did not purport to quote Veals. Furthermore, Veals told TFO Barnes that she confronted Defendant by placing her hand over her firearm and asking whether "we [are] good," in an attempt to de-escalate the confrontation. *See* Veals's Interview 13:46:30 to 13:47:30, 13:48:36-42. Thus, Defendant's allegation that TFO Barnes falsely attested that Veals "attempted to encourage [Defendant] to place [his] firearm down" is conclusory and contradicted by the evidence. *See Holmes*, 522 F. App'x at 212-13.

5

The Court further finds that Defendant did not meet his burden of showing the falsity of the second and third statements—that Defendant "told [Veals] that he was going to shoot the club up," and that Veals "was alarmed by [Defendant's] demeanor and felt that he posed a grave threat to other employees, patrons, and the establishment as a whole." Mot. 12. Defendant argues that these statements are false because Veals told TFO Barnes that "it was a third party . . . that told her that another man had an AR and was going to shoot up the club" and admitted that she was "not in [Defendant's] presence when this statement was allegedly made." *Id.*

Defendant's focus on this isolated statement by Veals ignores an alternative basis for TFO Barnes's affidavit. Veals told TFO Barnes that she saw Defendant retrieve a firearm, heard the audible click of the safety being disengaged, and heard Defendant demand to see "them [expletives] in there and them [expletives] – the bouncers." Veals's Interview 13:47:23-35. Further, Veals told TFO Barnes that she felt that she "was supposed to shoot" Defendant, *id.* 13:47:35-53, which would indicate that she perceived him as a threat. Accordingly, the Court finds that Veals's statements support TFO Barnes's affidavit, and Defendant is not entitled to a *Franks* hearing even if the precise interpretation of Veals's account might be debatable. *See Symmank*, 397 F. App'x at 994 (finding that disparate interpretations of evidence does not equate to a "deliberate falsehood or a reckless disregard for the truth").

Additionally, Defendant argues that TFO Barnes falsely attested that Defendant was "prohibited from being in possession of a firearm based on his prior felony convictions" under "state and federal laws." Mot. 13. According to Defendant, this statement is false because "Texas law permits a felon to possess a firearm in [his or her] home[] 5 years after the person's release from community supervision, parole, or confinement." *Id.* (citing TEX. PENAL CODE ANN. § 46.04(a)). Even if Defendant is entitled to possession of a firearm under this statute, Defendant

6

is alleged to have possessed a firearm at the club—obviously, not his home. Accordingly, Defendant's possession of the firearm would have been unlawful under state and federal law. The Court finds, therefore, that Defendant did not demonstrate that the affidavit falsely stated that he was prohibited from possessing firearms under state and federal law.

Furthermore, the Court finds that Defendant did not meet his burden of showing that the affidavit incorrectly stated that Defendant "demonstrated reckless nature and lack of respect for public safety." Mot. 13-14. Defendant contends that this statement is false because Defendant "had polite interactions at the night club," "attempted to give [Veals] a tip," did not "attempt[] to shoot anyone[] or raise[] his firearm." *Id.* While Gaston did inform TFO Barnes that Defendant was pleasant and tipped them on arrival to the nightclub, *see* Gaston's Interview 17:51:30-45, TFO Barnes's statement pertained to Defendant's conduct after Defendant was forcibly removed from the club. According to Veals, Defendant retrieved a loaded firearm, disengaged its safety, and moved to confront people inside the club. *See* Veals's Interview 13:46:30 to 13:47:05, 13:47:23-35. Surveillance video also shows numerous people in the parking lot at the time Defendant is alleged to be armed. *See* Surveillance Video. Thus, even if Defendant did not actually intend to harm anyone, Defendant put the club's patrons at risk of serious injury from an accidental discharge of a loaded firearm with its safety disengaged. The Court finds that such behavior is reckless and evidences a disregard for public safety.

For the reasons discussed above, Defendant did not meet his burden of making a substantial preliminary showing that the affidavit contained false or misleading statements or omissions. Consequently, the Court denies Defendant's motion for a *Franks* hearing.

### (2) *Scienter*

A defendant is entitled to a *Franks* hearing only if the allegations and the offer of proof demonstrate that the affiant made false statements "deliberate[ly] . . . or [with] reckless disregard

for the truth." *Torres*, 694 F. App'x at 944 (quoting *Franks*, 438 U.S. at 171). The court should deny a motion for a *Franks* hearing if the defendant's motion demonstrates that the affiant reasonably believed the veracity of his affidavit, *see United States v. Arispe*, 328 F. App'x 905, 907 (5th Cir. 2019), or was merely negligent, *see Symmank*, 397 F. App'x at 994 (citation omitted). In the present case, the Court finds that TFO Barnes's affidavit is substantially accurate for the reasons above. Even if the Court found that the challenged statements in the affidavit were nominally inaccurate, the challenged statements are reasonable inferences from what TFO Barnes gathered after reviewing the evidence. *See United States v. Looney*, No. 7:05-CR-005-R(1), 2005 WL 2693003, at *6 (N.D. Tex. Oct. 18, 2005). Moreover, Defendant made no offer of proof that the purported inaccuracies or inconsistencies in TFO Barnes's affidavit were made deliberately or with reckless disregard for the truth.[3] "It is insufficient that an affidavit was made negligently or through innocent error." *Symmank*, 397 F. App'x at 994 (citation omitted). Thus, the Court denies Defendant's motion for a *Franks* hearing because it finds that Defendant did not meet his burden of making a substantial preliminary showing of the requisite scienter.

### (3) *Materiality*

To warrant a *Franks* hearing, the defendant must make a substantial preliminary showing that "the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56. Thus, a court should deny the motion for a *Franks* hearing where the affidavit would still "give the reviewing judge probable cause for" issuing the warrant, even if the false statement was excised. *Signoretto*, 535 F. App'x at 340. To determine if probable cause existed, the Court

---

[3] Defendant argues that the alleged inaccuracies must have been reckless or deliberate given TFO Barnes's experience and involvement in the investigation. *See* Mot. 19-20; *id.* Ex. G. While the affiant's experience is relevant to determining whether the affiant acted deliberately or with reckless disregard, *see, e.g., United States v. Namer*, 680 F.2d 1088, 194 (5th Cir. 1982), police officers are not expected to draft affidavits with mechanical precision, *see Illinois v. Gates*, 462 U.S. 213, 235 (1983). In this case, the Court finds that the evidence of TFO Barnes's experience is insufficient to make a substantial preliminary showing that TFO Barnes recklessly or deliberately included false statements in his affidavit.

8

"look[s] at the totality of the circumstances to determine if there was 'a substantial basis for concluding that a search would uncover evidence of wrongdoing . . . .'" *United States v. Womack*, 675 F. App'x 402, 407 (5th Cir. 2017) (quoting *Gates*, 462 U.S. at 230-31).

In the present case, the search warrant was premised on TEX. PENAL CODE ANN. § 22.07(a)(5), which provides, in relevant part, that "[a] person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to . . . place the public or a substantial group of the public in fear of serious bodily injury." TEX. PENAL CODE ANN. § 22.07(a)(5). An accused's threat of violence, made with the intent to place the victim in fear of imminent serious bodily injury, is what constitutes the offense. *See Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. [Panel Op.] 1982) (citations omitted). The unchallenged portions of TFO Barnes's affidavit state that: (1) Defendant "removed a firearm from the glove compartment" in a parking lot of a nightclub; (2) Defendant "disarm[ed] the safety feature of a semi-automatic firearm"; (3) Veals was prompted to "reach[] for her firearm": (4) Defendant "fled the crime scene"; (5) Defendant "is prohibited from being in possession of a firearm based on his prior felony convictions" under "federal law[]"; and (5) Veals "observed [Defendant] arm himself with a firearm and begin making remarks about shooting the club up."[4] Search Warrant & Aff. ¶ 5, at '10141-43. In light of these statements and the totality of the circumstances, the Court finds that TFO Barnes's affidavit would give the presiding judge sufficient facts to find probable cause even if the challenged portions were excised. *See Signoretto*, 535 F. App'x at 339-40; *Womack*, 675 F. App'x at 407. On these additional grounds, the Court finds that Defendant has not carried his burden to justify a *Franks* hearing.

---

[4] Although Defendant challenges the other portions of the affidavit referencing Defendant's "remarks about shooting the club up," Defendant does not challenge this statement.

9

## B. *Motion to Suppress*

In cases where a search is supported by a warrant, the Court must suppress evidence only if the defendant proves, by a preponderance of the evidence, that (1) the good-faith exception to the exclusionary rule does not apply, and (2) that no probable cause for the warrant existed. *See United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005); *Creamer v. Porter*, 754 F.2d 1311, 1318 (5th Cir. 1985). To determine whether "the good-faith exception to the exclusionary rule applies," the Court considers whether "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Richardson*, 478 F. App'x at 87 (quoting *United States v. Leon*, 468 U.S. 897, 922 n.23 (1984)). The good-faith exception does not apply when:

> (1) the magistrate issuing the warrant was misled by information in an affidavit that the affiant knew or should have known was false; (2) the issuing magistrate abandoned the judicial role; (3) the warrant was based on an affidavit so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid.

*United States v. Sibley*, 448 F.3d 754, 757 (5th Cir. 2006). If the good-faith exception applies, the Court does not need to consider whether the magistrate had reasonable basis for finding probable cause to issue the warrant, *see United States v. Tillman*, 84 F. App'x 464, 465 (5th Cir. 2004) (citation omitted), and should deny the motion to suppress. *See United States v. Alvarez*, 127 F.3d 372, 374 (5th Cir. 1997) ("The Fourth Amendment's exclusionary rule will not bar the admission of evidence obtained with a warrant later found to be invalid so long as the executing officers acted in reasonable reliance on the warrant." (citing *Leon*, 468 U.S. at 920)).

If the good-faith exception does not apply, the Court considers "whether 'the magistrate had a substantial basis for' determining that probable cause [to issue the warrant] existed." *United States v. Pawlak*, 935 F.3d 337, 347 (5th Cir. 2019) (quoting *United States v. Cherna*, 184 F.3d

403, 407 (5th Cir. 1999)). To determine if probable cause existed, the Court "look[s] at the totality of the circumstances to determine if there was 'a substantial basis for concluding that a search would uncover evidence of wrongdoing . . . .'" *Womack*, 675 F. App'x at 407 (quoting *Gates*, 462 U.S. at 230-31). An affidavit would not support a finding of probable cause if it includes only "[c]onclusory allegations." *Id.* (citing *Gates*, 462 U.S. at 235).

Here, Defendant's sole argument for suppression is that the warrant was supported by an affidavit that contained statements that were intentionally false or were made with reckless disregard to their truth, and that the warrant would be invalid without those statements. *See* Mot. 9. The Court finds that Defendant did not meet his burden of showing entitlement to a *Franks* hearing. *See Sibley*, 448 F.3d at 757. Defendant makes no other argument to show that the good-faith exception does not apply. Accordingly, the Court finds that the good-faith exception applies and denies the motion to suppress. *See, e.g.*, *Womack*, 675 F. App'x at 408; *Symmank*, 397 F. App'x at 993-94; *United States v. Mayes*, 364 F. App'x 136, 137 (5th Cir. 2010); *Arispe*, 328 F. App'x at 908.

### III.   CONCLUSION

For the reasons discussed above, the Court denies the Motion to Suppress and Request for a *Franks* hearing.

**SO ORDERED.**

SIGNED November 26, 2019.

KAREN GREN SCHOLER
**UNITED STATES DISTRICT JUDGE**